**Edward J. HOLLINRAKE, Appellee,**

v.

**MONROE COUNTY, Iowa; Monroe County, Iowa Civil Service Commission; and Jack Baker, in his Official Capacity as Monroe County Sheriff, Defendants,**

**and**

**Iowa Law Enforcement Academy, Appellant.**

No. 88–91.

Supreme Court of Iowa.

Dec. 21, 1988.

Rehearing Denied Jan. 23, 1989.

Thomas J. Miller, Atty. Gen., and Gary L. Hayward, Asst. Atty. Gen., for appellant.

John A. Pabst of Clements, Pothoven, Pabst & Stravers, Albia, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO and SNELL, JJ.

SCHULTZ, Justice.

The Iowa Law Enforcement Academy (academy) refused to train and certify a Monroe County Deputy Sheriff, plaintiff Edward J. Hollinrake, because his vision did not meet the academy's standards for a peace officer. Plaintiff filed an action in district court against the academy and others not involved in this appeal, alleging a civil rights violation by the academy of employment discrimination based on disability. A jury returned a verdict in favor of the plaintiff. He received relief through a court order requiring the academy to train him in the basic program and, upon successful completion of the course, to certify him as a peace officer. He also received attorney fees under Iowa Code section 601A.15(8)(a).[1] The academy appeals from this judgment.

The academy urges that the district court did not have authority to hear and decide this case. It contends that plaintiff's remedy is governed by the Administrative Procedure Act, Iowa Code chapter 17A, rather than by a civil rights action. As we agree with this contention, we reverse.

The Monroe County Sheriff selected plaintiff as a deputy from the seven candidates referred by the local civil service commission. The academy, an agency of the state, trains and sets standards for law enforcement service. Iowa Code § 80B.3. After nine months of service as a deputy sheriff, plaintiff attended the academy's school but was released because his vision did not meet the hiring standards set by the academy's rules.

Plaintiff presented evidence of his competence as an officer, including his ability to see and function with glasses, his performance with firearms and the sheriff's opinion of his abilities as a deputy sheriff.

In his action, plaintiff alleges that the academy's administrative rules regarding the vision requirements for peace officers enrolled in its training program violate Iowa Code section 601A.6(1)(a), a provision concerning unfair employment practice. Plaintiff maintains that these rules are unreasonable, arbitrary and capricious because they do not provide for a waiver based upon the demonstrated ability or practical testing of the applicant peace officer. He asserts that he is fully qualified to perform the duties of a deputy sheriff but for the defined disability. Plaintiff has secured an administrative release from the Iowa Civil Rights Commission pursuant to Iowa Code section 601A.16,[2] allowing him to commence his action in district court.

The academy moved to dismiss the action, maintaining that plaintiff's failure to comply with the requirements of chapter 17A denies the court authority to hear the suit. District Judge Richard J. Vogel overruled this motion, indicating that the pleadings properly stated a claim for relief under a civil rights violation. At the jury trial with District Judge James P. Rielly presiding, a verdict for the plaintiff was returned. On appeal, the academy claims that Judge Vogel's ruling improperly alters the proceedings from a judicial review of agency action to a civil rights action.

We recognize that the procedures and remedies provided the district court in judi-

---

1. All statutory references are to the Iowa Code of 1985.

2. Under this section an aggrieved party must initially seek administrative relief with the com-

mission. Under certain conditions the commission, however, may issue a release allowing the complainant a right to commence the action in district court.

cial review of agency action differ substantially from those authorized in a civil rights action. In judicial review of agency action under section 17A.19, the district court generally acts in an appellate capacity as opposed to the original factfinding mission present in adjudicating a civil rights complaint pursuant to Iowa Code sections 601A.17(5) and 601A.15(8).

The practical result of allowing the commission or the court, aided by a jury in this case, to determine this controversy as a civil rights complaint is to transfer in part to the civil rights factfinder, the academy's authority to set minimum hiring standards for law enforcement officers. Furthermore, were we to decide that this was the legislative intent, all qualification standards adopted by the academy would be subject to a case-by-case scrutiny by the civil rights factfinder under chapter 601A procedures. In analyzing this issue, we must examine the legislative provisions.

The academy is required to promulgate rules for minimum physical fitness of law enforcement officers by Iowa Code section 80B.11 as follows:

> The director of the academy, subject to the approval of the council, *shall promulgate* rules *in accordance with the provisions of* this chapter and *chapter 17A*, giving due consideration to varying factors and special requirements of law enforcement agencies relative to the following: ...
>
> 4. *Minimum standards of physical ... fitness which shall govern the recruitment, selection and appointment of law enforcement officers.*

(Emphasis added). Accordingly, the academy enacted the current rule, 501 Iowa Administrative Code section 2.1 which, prior to March 11, 1987, was designated as 550 Iowa Administrative Code section 2.1. It provides in part:

> In no case shall any person hereafter be selected or appointed as a law enforcement officer unless the person: ...
>
> 2.1(9) Has an uncorrected vision of not less than 20/100 in both eyes, corrected to 20/20. ...

We believe that the legislature has clearly indicated that the academy's actions of rule-making and enforcing its physical fitness standards are agency actions under chapter 17A. Section 80B.11 states that its rules are to be promulgated in accordance with chapter 17A. Rule-making is a form of "agency action." Iowa Code § 17A.2(9). The academy is required to regulate the training of peace officers and may issue certificates of graduation to successful trainees. Iowa Code §§ 80B.11, 80B.13(3). This certificate is defined as a "license," Iowa Code § 17A.2(3), and the grant or denial of a license is agency action. Iowa Code § 17A.2(4).

The legislature has provided that unless another statute states otherwise, "the judicial review provisions of this chapter (17A) shall be the exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review of such agency action." § 17A.19. *Also see* Iowa Code § 17A.1 ("This chapter is meant to apply to all rule-making and ... all suits for judicial review of agency action that are not specifically excluded from this chapter or some portion thereof by its express terms or by the express terms of another chapter."); § 17A.23 ("[T]his chapter shall take precedence unless the other statute expressly provides that it shall take precedence...."). We find no express language in any sections of the civil rights statutes, Iowa Code chapter 601A, which negates the applicability of judicial review pursuant to section 17A.19.

Plaintiff urges, however, that agency actions which result in a violation of civil rights are matters not under the exclusive review of section 17A.19. When a civil rights claim is asserted, he maintains the civil rights commission, rather than the academy, has primary jurisdiction. While he concedes that the academy has authority to enact rule 2.1 setting vision standards, plaintiff urges that the adjudicator under chapter 601A has primary jurisdiction and determines whether the rules are discriminatory to a disabled person or are applied in a discriminatory manner. As authority for his primary jurisdiction claim, plaintiff

cites Iowa Code section 601A.5(2) which gives the commission the power "[t]o receive, investigate, and finally determine the merits of complaints alleging unfair or discriminatory practices." For his claim of disability discrimination, he cites the unfair employment practices statute, Iowa Code section 601A.6, which prohibits an employer from unfair or discriminatory practices based on the disability of the employee or applicant. He points to the specific language as follows:

If a disabled person is qualified to perform a particular occupation by reason of training or experience, the nature of that occupation shall not be the basis for exception to the unfair or discriminating practices prohibited by this subsection.

§ 601A.6(1)(c). The academy urges that this section is inapplicable because it is not an employer of peace officers. We find it unnecessary to pass on this point, however. With these contentions in mind, we now examine our previous holdings.

Our earlier cases have generally held that the judicial review provisions of section 17A.19 provide the exclusive means for challenging agency action. *Dougherty v. State,* 323 N.W.2d 249, 250 (Iowa 1982); *Salsbury Laboratories v. Iowa Dept. of Envtl. Quality,* 276 N.W.2d 830, 835 (Iowa 1979); *Kerr v. Iowa Pub. Serv. Co.,* 274 N.W.2d 283, 287 (Iowa 1979). In a recent case involving a state employee's sex discrimination claim against a state agency employer, we recognized that all challenges to agency action are not necessarily exclusively within the agency. *Jew v. Univ. of Iowa,* 398 N.W.2d 861 (Iowa 1987). We concluded that "the exclusivity of the judicial review procedures of section 17A.19, as a means of assailing acts or omissions of administrative agencies, must necessarily vary, based on the context of the transaction." *Id.* at 864. We further noted that the lines of exclusivity are not as rigidly drawn in respect to "other agency action." *Id.*

We believe that the holding in *Jew* is of no aid to plaintiff. In *Jew*'s action against the agency, she alleged sex discrimination in her discharge from employment. We distinguished her situation from those cases in which "the action challenged was the very decision which the agency's mandate directed it to make." *Id.* at 865. We concluded that the claim of sexual harassment in her termination had little connection with the mandate of the agency or its governing body. *Id.* The holding in *Jew* would be more applicable to a discrimination claim against the officer or department who exercises discretion in the hiring and firing of peace officers.

In contrast to a discretionary individual employment decision, the gist of plaintiff's complaint is directed at the alleged discriminatory nature of the physical fitness rule. Although he complains of the application of the rule, he does so solely on the basis that the enforcement of the rule results in discrimination due to his disability. Stated otherwise, plaintiff's only complaint is based on the substance of the rule. Unlike the complaint in *Jew* grounded on the agency's employment termination practices, plaintiff's challenge is directed at the agency's action in carrying out its statutory duty to enact a rule.

We conclude that plaintiff's action is subject to the exclusivity of the judicial review provision of section 17A.19. The academy stands in a position similar to the agencies in *Dougherty, Salsbury* and *Kerr.* In each of these cases, the agency acted on legislatively prescribed authority, and we applied the rule that section 17A.19 was the exclusive judicial remedy available.

Finally, plaintiff argues that the agency rules neither afforded him a hearing nor did they provide any authority to grant the relief he sought. This again is a direct attack on the agency rules. Plaintiff can contest the validity of the agency rules either in a contested case before the agency or based on rule-making infractions by a petition for judicial review in district court. *Lundy v. Iowa Dept. of Human Serv.,* 376 N.W.2d 893, 895 (Iowa 1985). Our ruling does not deprive him of a remedy for challenging invalid rules.

In reaching this result, we are mindful of the power of the civil rights commission to investigate and determine the validity of

civil rights complaints. As indicated in *Jew,* this authority may extend in limited fashion into the actions of other agencies or to their employees' acts. This power does not extend into the legislatively mandated rule-making powers of another agency, however. Discrimination claims attributed to such rules must be made to the enacting agency, and court review must be sought under section 17A.19.

We conclude that section 17A.19 provides the exclusive means for challenging the academy's action in this case. The district court was without authority to entertain this matter as a civil rights action. We hold that the district court erred in failing to sustain the academy's motion to dismiss. We need not answer the other matters presented by the parties.

REVERSED.