POLK COUNTY SECONDARY ROADS, Polk County Board of Supervisors, AFSCME 1868, and AFSCME International, Appellants,

v.

IOWA CIVIL RIGHTS COMMISSION, Appellee.

No. 89-1629.

Supreme Court of Iowa.

April 17, 1991.

812

 

James A. Smith, County Atty., and Mary W. Vavroch, Asst. County Atty., for appellants Polk County.

Michael E. Hansen, Des Moines, for appellants AFSCME Local 1868 and AFSCME Intern.

Thomas J. Miller, Atty. Gen., and Teresa Baustian, Asst. Atty. Gen., for appellee.

Susan M. Bolte, Des Moines, for amicus curiae Public Employment Relations Bd.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

This case involves a collective bargaining agreement which prohibits discrimination and includes an election of remedies provision. The fundamental question is whether the arbitration of civil rights complaints conflicts with Iowa civil rights law.

## I. *Background.*

In 1984, Kenneth Hill, Jr., a black male, was fired from his job with Polk County for allegedly stealing some county-owned gravel for private use by a coworker. The coworker, who was white and who also participated in the theft, was also fired. Hill believed his conduct was less serious than that of his coworker who benefited from the theft; he also believed it to be less serious than the conduct of other coworkers who had received lesser sanctions in the past. Hill's certified bargaining representative, under Iowa's public employment law, was the American Federation of State, County and Municipal Employees, Local 1868 (AFSCME Local). On April 9, 1984, Hill began the grievance procedures under the AFSCME Local's collective bargaining agreement (agreement). He claimed his discharge was discriminatory and not for good cause. Prior to arbitration, Hill filed a complaint with the Iowa Civil Rights Commission (Commission) against Polk County Secondary Roads and the Polk County Board of Supervisors (collectively referred to as the county) alleging race was a factor in his termination. After the arbitration hearing, but before a decision had been rendered, the county received a copy of Hill's complaint and subsequently objected to the arbitrability of the dispute based on a provision in the agreement. The relevant portion of the agreement is as follows:

> The provisions of this Agreement shall be applied equally to all Employees in the bargaining unit, without discrimination as to age, sex, marital status, race, color, creed, national origin, partisan political affiliation, or Union activity. The Union shall share equally with the Employer the responsibility for applying this provision of the Agreement. In the event that any Employee takes action through any court, governmental agency or other agency regarding violation of his/her rights, then all rights to this contractual grievance procedure shall be waived and no grievance shall be allowed regarding the issue.

Based on this election of remedies provision, the arbitrator determined that Hill's grievance was nonarbitrable and denied the grievance. Because of this denial, Hill filed another complaint with the Commission. This complaint was directed against the county, the AFSCME Local and AFSCME International. He claimed that the denial of his contractual right to arbitrate because he exercised his statutory rights was a form of discrimination. Although Hill's original complaint was administratively closed, the Commission found probable cause to believe the election of remedies clause constituted discrimination against Hill on the part of the contracting parties.[1]

The AFSCME Local began an action before the Public Employment Relations Board (PERB) for a declaratory judgment on the question of whether the election of remedies clause is a mandatory, permissive, or illegal subject of bargaining. The AFSCME Local and the county participated in the declaratory ruling process, but the Commission was not informed of the proceeding. PERB eventually ruled that the election of remedies provision was a permissive subject of bargaining.

---

1. Hill also complained that the AFSCME Local had discriminated against him on the basis of race in its representation of him during the grievance procedure resulting from his termination. The Commission found no violation. Hill did not seek judicial review of the agency's dismissal of this complaint.

On May 15, 1986, a Commission hearing officer issued a recommended decision and order. This decision, which was adopted by the Commission with only one minor addendum, found that the election of remedies clause was retaliatory. As a remedy, the Commission ordered most of the discrimination clause stricken from the agreement. It ordered reconsideration be given as to whether Hill's grievance is arbitrable with the removal of a portion of the clause. The Commission reasoned that if the removed provisions of the discrimination clause were not in the agreement, the forfeiture of contractual rights to grievance under the contract would no longer be required. On appeal, the district court affirmed the Commission. This appeal followed.

When an appeal is taken from actions of the Commission in a chapter 601A proceeding, our scope of review is for the correction of errors of law. *Peoples Memorial Hosp. v. Iowa Civil Rights Comm'n*, 322 N.W.2d 87, 90–91 (Iowa 1982). We apply the substantial evidence rule of section 17A.19(8)(f) to determine whether there is sufficient evidence to warrant the decision the Commission made and whether our conclusions are the same as those of the district court. *King v. Iowa Civil Rights Comm'n*, 334 N.W.2d 598, 601 (1983).

II. *The International's Motion to Dismiss.*

■ AFSCME International urges that there is no substantial evidence to support its inclusion as a party in this action, as it was not a party to the collective bargaining agreement. It urges only the exclusive certified representative can be sued. Iowa Code §§ 20.16–17, 20.23. It claims the court and Commission erred in denying its motion to dismiss. At oral argument the Commission conceded there was no apparent reason for including the International as a party. Accordingly, we reverse the court's ruling and hereby dismiss AFSCME International from this action.

III. *Statute of Limitations.*

The county urges that the act which the court found to be discriminatory was agreeing to the election of remedies clause. Because this act took place more than 180 days prior to the filing of Hill's complaint, they urge the complaint is barred. Iowa Code § 601A.15(12). The Commission urges that the clause and its enforcement constitute a "continuing violation," which in effect tolls the running of the statute of limitations.

■ The Iowa Administrative Code provides that,

[i]f the alleged unlawful discriminatory practice or act is of a continuing nature, the date of the occurrence of the alleged unlawful practice shall be deemed to be any date subsequent to the commencement of the alleged unlawful practice up to and including the date upon which the unlawful practice has ceased.

161 Iowa Admin.Code, 3.3(2) (1988). On the other hand, it is equally clear that a plaintiff may not use the continuing violation doctrine to prosecute claims of past discrimination even if the effects of that discrimination continue into the present. *HyVee Food Stores v. Civil Rights Comm'n*, 453 N.W.2d 512, 527 (Iowa 1990).

■ Here the collective bargaining agreement set out a policy which Hill and the Commission alleged to be discriminatory. This policy remained in effect well into the 180–day limitations period. The limitations period is measured from the last occurrence of an instance of that policy. *Guardians Assoc. v. Civil Serv. Comm'n*, 633 F.2d 232, 249 (2d Cir.1980), *aff'd*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983). The last instance of the allegedly discriminatory policy was the dismissal of Hill's grievance procedure. This occurred less than 180 days prior to the filing of Hill's complaint.

■ The AFSCME Local cites *Brown v. Public Employment Relations Board*, 345 N.W.2d 88 (Iowa 1984), as authority for the proposition that the limitations period begins to run when the contract clause becomes effective. *Brown* is distinguishable from this case; in *Brown* the complainant's status was affected immediately when the clause became effective. Here, Hill was

not affected for years after the election of remedies clause was first adopted. *Brown* also differs from the present case in that *Brown* was not a civil rights case. We construe chapter 601A broadly to effectuate its purposes. Iowa Code § 601A.18; *Chauffeurs, Teamsters & Helpers, Local Union No. 238 v. Iowa Civil Rights Comm'n*, 394 N.W.2d 375, 382 (Iowa 1986). We hold that Hill's complaint was timely filed.

## IV. *Iowa Civil Rights Act.*

The Iowa Civil Rights Act is found at chapter 601A of the Iowa Code. Section 601A.6 prohibits employers and labor organizations from discriminating against employees and union members on the basis of "age, race, creed, color, sex, national origin, religion or disability." Of more specific importance to this case, section 601A.11(2) makes it an unfair or discriminatory practice to discriminate against another person because such person has filed a complaint under chapter 601A. Finally, section 601A.16(1) provides that the administrative procedures established by chapter 601A are the exclusive means for asserting claims under that chapter. *Lynch v. City of Des Moines*, 454 N.W.2d 827, 831 n. 2 (Iowa 1990).

## V. *Iowa Public Employment Relations Act.*

The Iowa Public Employment Relations Act is found at Iowa Code chapter 20. The chapter establishes collective bargaining between state government and its employees. PERB, created by section 20.5, is charged with administrating the provisions of the chapter. Iowa Code § 20.6(1). Pursuant to section 17A.9, PERB has provided by rule for declaratory rulings. 621 Iowa Admin.Code 10.1 (1986) (formerly 660 Iowa Admin.Code 10.1 (1985)). One of PERB's tasks is to determine, upon request, whether a given subject is a mandatory, permissive, or illegal subject of bargaining. *See* Iowa Code § 20.9; Note, *The Scope of Negotiations Under the Iowa Public Employment Relations Act*, 63 Iowa L.Rev. 649, 668–70 (1978).

## VI. *Arbitrability of Discrimination Claims.*

Section 601A.16(1) states, "[a] person claiming to be aggrieved by an unfair or discriminatory practice must initially seek an administrative relief by filing a complaint with the Commission...." We have noted that concurrent or parallel grievance procedures and statutory appeal procedures are undesirable and should be avoided. *Shenandoah Educ. Ass'n. v. Shenandoah Community School Dist.*, 337 N.W.2d 477, 482 (Iowa 1983). We have also held that when the legislature has made the dispute resolution provisions of a chapter exclusive, arbitration is inappropriate. *Devine v. City of Des Moines*, 366 N.W.2d 580, 582 (Iowa 1985).

We have often stated that the procedures under chapter 601A are exclusive and that a claimant asserting a discriminatory practice must pursue the remedy provided by the Act. *Smith v. ADM Feed Corp.*, 456 N.W.2d 378, 381 (Iowa 1990); *Lynch v. City of Des Moines*, 454 N.W.2d 827, 831 n. 2 (Iowa 1990); *Northrup v. Farmland Indus.*, 372 N.W.2d 193, 197 (Iowa 1985). More specifically, we have held that chapter 601A preempts other remedies which might be available, and that civil rights complainants will not be allowed to avail themselves of those other remedies. *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 638 (Iowa 1990). The specific language of section 601A.16(1), combined with our previous statements that the procedures under chapter 601A are exclusive, convinces us that the arbitration of civil rights violations is against public policy. Provisions for arbitration in a collective bargaining agreement do not override statutory civil rights provisions. Iowa Code § 20.28.

The Court of Appeals of New York faced a similar situation involving Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e—2000e–17. *In re Wertheim & Co. v. Halpert*, 421 N.Y.S.2d 876, 48 N.Y.2d 681, 397 N.E.2d 386 (1979). In a memorandum opinion, the court affirmed an order of the appellate division holding that an arbitra-

tion agreement was unenforceable where the claim to be arbitrated was the subject of an action pending in federal court. *Id.* at 877, 48 N.Y.2d 681, at 683, 397 N.E.2d at 387.

We recognize the United States Supreme Court has held that the arbitration of a claim of employment discrimination does not bar an employee's right to proceed to trial under Title VII of the Civil Rights Act of 1964. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 48, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147, 158 (1974). Thus, generally, under federal law, victims of racial discrimination in the private sector have a choice of remedies and are not limited to Title VII. *Id.* at 47–49, 94 S.Ct. at 1019, 39 L.Ed.2d at 158. They can submit their discrimination claims to arbitration. However, even under federal law, Title VII is the exclusive remedy available to a federal employee complaining of job-related racial discrimination. *Brown v. General Servs. Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402, 413 (1976).

The election of remedies clause in the collective bargaining agreement is ineffective because, as the Commission's order points out, under Iowa law there is no choice to be made. Iowa law which specifically requires state civil rights complaints initially to be filed with the Commission. Iowa Code § 601A.16(1). When a violation of chapter 601A forms the basis of a public employee's grievance, arbitration is not an option. Hill was not adversely affected by the terms of the agreement. There was no retaliation on the part of the county or the local.

Any other basis for his grievance that Hill might have, unrelated to his chapter 601A claim of discrimination, remains arbitrable. This is consistent with the agreement. The only issue which the agreement purported to affect was violations of an employee's rights regarding which the employee takes action through any court, governmental agency or other agency. Hill's complaint with the Commission dealt only with alleged racial discrimination, thus any other grounds for his grievance remain arbitrable. The agree-

ment merely purported to deny employees the right to arbitrate something which we determine to be nonarbitrable.

VII. *Res Judicata Effect of the PERB Ruling.*

The county and the AFSCME Local contend that the declaratory ruling issued by PERB precluded the Commission from hearing Hill's complaint. They urge, citing *City of Des Moines v. Iowa Civil Rights Commission*, 343 N.W.2d 836 (Iowa 1984), that PERB's ruling is entitled to res judicata effect. While it is true that a final adjudicatory decision of an administrative agency is entitled to res judicata effect as if it were a judgment of a court, *id.*, it is also true that for issue preclusion or res judicata to apply, the issue litigated must be identical to the issue raised in the previous action. *Amro v. Iowa Dist. Court,* 429 N.W.2d 135, 140 (Iowa 1988).

PERB's ruling, issued January 31, 1986, held that the election of remedies clause in this case was a legal permissive subject of bargaining within the meaning of section 9 of the Public Employment Relations Act, Iowa Code section 20.9. The issue before the Commission, however, was not the legality of the clause under chapter 20, but rather whether the clause constituted discrimination under chapter 601A. This is not the same issue as the one which was before PERB. While part of PERB's inquiry involved determining whether the clause was legally prohibited, this is a much broader question than the one faced by the Commission.

There are circumstances in which the clause could come into play where the concerns of chapter 601A would not be implicated. For example, among other things, the agreement protects employees from discrimination on the basis of marital status and partisan political affiliation. Neither of these classifications is protected by chapter 601A. Therefore, chapter 601A is not a barrier to the arbitration of grievances which are based on discrimination on those grounds. Nor would chapter 601A, under such circumstances, permit the Com-

mission to contradict PERB's ruling that the election of remedies clause was legal.

The issue before the Commission, however, was not whether, in general terms, the election of remedies clause was legal. The issue was whether, in the context of race, the agreement's purported forfeiture of Hill's arbitration rights constituted a discriminatory practice. Because the issues before the two agencies were not the same, the Commission was not precluded from proceeding as it did.

## VIII. *Primary Jurisdiction.*

The county and the AFSCME Local both urge PERB had primary jurisdiction over this case and that the Commission therefore was without authority to decide the case. They rely heavily on our decision in *Hollinrake v. Monroe County,* 433 N.W.2d 696 (Iowa 1988). In *Hollinrake,* we held that a civil rights complaint against the Iowa Law Enforcement Academy, based on its vision requirements for certifying peace officers, should have been brought under chapter 17A rather than chapter 601A. We held that the proper means of contesting the agency's rule was under chapter 17A because the allegedly discriminatory rule was one which the agency was required to make under Iowa law. *Id.* at 699, citing Iowa Code § 80.11 (1985).

*Hollinrake* is distinguishable from this case. The civil rights complaint in this case is not about a rule which PERB was required to make. PERB is unrelated to the underlying civil rights complaint and did not become involved in this case until after the civil rights complaint had been filed.

■■■■ *Hollinrake* clearly sets out an exception to the general rule of section 601A.16(1) that all civil rights complaints must proceed through the Commission. We decline, however, to widen that exception beyond cases where the alleged discriminatory practice results from "the agency's action in carrying out its statutory duty to enact a rule." *Hollinrake,* 433 N.W.2d at 699. We hold Hill was not precluded by the doctrine of primary jurisdiction from proceeding with his complaint through the Commission. Indeed, we hold that he had no other means of proceeding.

## IX. *Reformation of the Collective Bargaining Agreement.*

■■■■ The Commission's order deleted a portion of the agreement. Iowa Code section 601A.15(8) sets out the remedies which the Commission may employ to carry out the purposes of chapter 601A. The options include remedial action as well as cease and desist orders. While the Commission is given wide latitude in fashioning an appropriate remedy, the action taken by the Commission must be statutorily authorized. *Chauffeurs, Teamsters & Helpers,* 394 N.W.2d at 384.

■■■■ We find no statutory authority which would permit the Commission to rewrite a collective bargaining agreement. While clearly the Commission may prevent the clause from being enforced, it may not simply delete portions of the agreement.

## X. *Conclusion.*

In summary, we reverse the court's denial of the International's motion to dismiss. We affirm the court's holding that the action was timely filed. Based upon our determination that civil rights complaints are nonarbitrable, we reverse the court's conclusions that the AFSCME Local and the county discriminated against Hill by including the election of remedies clause in the agreement. We affirm the court's determination that the Commission was not precluded by PERB's earlier ruling. We affirm the court's holding that the doctrine of primary jurisdiction did not prevent the Commission from proceeding with Hill's complaint. We reverse the court on the question of the Commission's authority to rewrite the collective bargaining agreement.

Costs to be assessed one-half against appellants and one-half against appellees.

AFFIRMED IN PART AND REVERSED IN PART.